IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) James Robertson, on Behalf of Himself and | § | |
| 2) All Others Similarly Situated, | § | |
| | § | No. 4:21-cv-00010-CVE-CDL |
| Plaintiff, | § | |
| | § | Jury Trial Demanded |
| v. | § | |
| | § | Collective Action |
| 1) Colburn Electric, LLC (a/k/a Colburn Air, | § | |
| Colburn Electric Company, and/or Colburn | § | This Action Is Related to 4:20-cv- |
| Aircom), | § | 00127-JED-JFJ |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, James Robertson ("Plaintiff"), on behalf of himself and all others similarly situated, files this Complaint against Colburn Electric, LLC (a/k/a Colburn Air, Colburn Electric Company, and/or Colburn Aircom) ("Defendant"), showing in support as follows:

## I.   NATURE OF THE CASE

1.   This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA/PPPA") for Defendant's failure to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 during each seven-day workweek as an employee of Defendant.

2.   Plaintiff files this lawsuit on behalf of himself and as a FLSA/PPPA collective action on behalf of all other similarly situated current and/or former employees of Defendant.

3.   Plaintiff and the similarly situated employees are/were employed by Defendant as crew members performing work relative to 5G tower upgrades and related services. Employees of Defendant who performed that 5G tower/service-related work were sometimes referred to as

*Plaintiff's Original Complaint – Page* 1

working in Defendant's "Colburn Air" section. On information and belief, Defendant uses the name Colburn Aircom for that 5G Tower Work section or division.

4.      Plaintiff and the similarly situated employees were generally paid on a day rate basis.

5.      Plaintiff and the similarly situated employees typically worked multiple day hitches/shifts/assignments away from their respective homes. Because the worksites were away from their respective homes, Plaintiff and the similarly situated employees typically stayed overnight in hotels during their out of town, and generally out of state, work hitches/shifts/assignments.

6.      Plaintiff and the similarly situated employees typically were required to travel hundreds of miles to and from the 5G tower/service-related jobsites. That travel routinely cut across Plaintiff's and similarly situated employees' normal working hours during both regular working days and nonworking days. That travel time is compensable time pursuant to the FLSA/PPPA.

7.      Plaintiff and the similarly situated employees regularly worked more than 40 hours per seven-day workweek but were not paid time and one-half their respective regular rates of pay for those overtime hours worked. Instead, Plaintiff and the similarly situated employees generally received their respective day rate pay only for their work performed for Defendant without being paid any overtime premium pay.

8.      Plaintiff and the collective action members seek all damages available under the FLSA/PPPA including unpaid overtime wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.      THE PARTIES, JURISDICTION, AND VENUE

### A.      Plaintiff James Robertson

9.      Plaintiff is a natural person. He has standing to file this lawsuit.

10.      Plaintiff was an employee of Defendant.

11.      Plaintiff was employed by Defendant out of/through its primary business location at 829 West Elgin Street, Broken Arrow, Oklahoma 74012. However, the work performed by Plaintiff for Defendant was typically at locations in Oklahoma and states other than Oklahoma that were far from that Broken Arrow, Oklahoma business location.

12.      By filing this lawsuit and complaint, Plaintiff consents to be a party plaintiff to this FLSA/PPPA action pursuant to 29 U.S.C. § 216(b). Plaintiff's consent to join is filed as Exhibit A to this Complaint.

### B.      Collective Action Members

13.      The putative collective action members are all current and/or former 5G Tower Crew employees of Defendant who were paid on a day rate basis and were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek. Because Defendant did not pay all overtime premium compensation to its 5G Tower Crew employees who were paid on a day rate basis and who routinely worked in excess of 40 hours per workweek, Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA/PPPA.

14.      The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward, or such other time period as deemed appropriate by the Court.

15.     Plaintiff reserves the right to redefine the class, request more than one class, and/or request sub-classes relative to any motion for conditional certification filed in this lawsuit.

**C.     Defendant Colburn Electric, LLC (a/k/a Colburn Air, Colburn Electric Company, and/or Colburn Aircom)**

16.     Defendant is a domestic for-profit corporation.

17.     During all times relevant to this lawsuit, Defendant has done business in the State of Oklahoma.

18.     Defendant is also known as Colburn Air.

19.     On information and belief, Defendant is also known as Colburn Electric Company.

20.     On information and belief, Defendant is also known as Colburn Aircom.

21.     Defendant's principle place of business is 829 West Elgin Street, Broken Arrow, Oklahoma 74012.

22.     At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

23.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

24.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

25.     For example, Defendant employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include electrical equipment, electrical supplies, 5G tower upgrade equipment, 5G tower upgrade supplies, vehicles, safety equipment/PPE, and communications equipment.

26.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

**D.     Jurisdiction and Venue**

27.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

28.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

29.     During all times relevant to this lawsuit, Defendant has done business in the State of Oklahoma and continues to do business in the State of Oklahoma.

30.     Defendant's principal place of business is located within the boundaries of the United States District Court for the Northern District of Oklahoma.

31.     Plaintiff's home yard for Defendant was in Broken Arrow, Oklahoma.

32.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely the FLSA/PPPA.

### III.     FACTUAL BACKGROUND

33.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

34.     Defendant provides residential and commercial electrical installation, service, and repair.

35.     Defendant also provides and/or provided commercial services relative upgrading cell/mobile towers to 5G capability and/or maintaining same in numerous states (the "5G Tower Work"). That work was commonly referred to as "Colburn Air" by employees of Defendant.

36.     On information and belief, Defendant also used the name Colburn Aircom relative to the 5G Tower Work.

37.     In connection with providing 5G Tower Work, Defendant employed numerous workers consisting of laborers, technicians, electricians, assistants to electricians, tower hands, foremen and other workers (the "5G Tower Crews").

38.     Defendant's 5G Tower Work jobsites were located in states such as Illinois, Iowa, Kansas, Missouri, Oklahoma, Texas, and Wisconsin.

39.     Plaintiff was employed by Defendant from approximately September 2018 to approximately February 2020 performing 5G Tower Work.

40.     The work performed by Plaintiff relative to the 5G Tower Work was manual labor in nature.

41.     Defendant generally paid Plaintiff on a day rate basis relative to his 5G Tower Work.

42.     Plaintiff typically worked multiple day hitches/shifts/assignments away from his home in Henryetta, Oklahoma relative to the 5G Tower Work.

43.     Plaintiff worked for Defendant at Defendant's 5G Tower Work jobsites in Illinois, Iowa, Kansas, Missouri, Oklahoma, Texas, and Wisconsin.

44.     Because the 5G Tower Work jobsites were away from Plaintiff's home, Plaintiff typically stayed overnight in hotels during his out of town, and generally out of state, work assignments relative to the 5G Tower Work.

45.     Plaintiff was typically required to travel hundreds of miles to and from the 5G Tower Work jobsites relative to a given hitch/shift/assignment. That travel routinely cut across

Plaintiff's normal working hours during both regular working days and nonworking days. That travel time is compensable time under the FLSA/PPPA.

46.     Plaintiff regularly worked more than 40 hours per seven-day workweek relative to the 5G Tower Work but was not paid time and one-half his regular rate of pay for those overtime hours worked. Instead, Plaintiff received his day rate pay only for that work without being paid any overtime premium pay by Defendant.

47.     Defendant employed numerous other employees in its 5G Tower Crews performing 5G Tower Work.

48.     Like Plaintiff, those other 5G Tower Crew employees were paid on a day rate basis.

49.     Like Plaintiff, the work performed by those other 5G Tower Crew employees was manual labor in nature.

50.     Like Plaintiff, those other 5G Tower Crew employees typically worked multiple day hitches/shifts/assignments away from their respective homes.

51.     Because the 5G Tower Work jobsites were typically far away from the homes of those other 5G Tower Crew employees, those employees typically stayed overnight in hotels during their out of town, and generally out of state, work assignments relative to the 5G Tower Work.

52.     Like Plaintiff, those other 5G Tower Crew employees were typically required to travel hundreds of miles to and from the 5G Tower Work jobsites relative to a given hitch/shift/assignment. That travel routinely cut across the normal working hours during both regular working days and nonworking days of those other 5G Tower Crew employees. That travel time is compensable time under the FLSA/PPPA.

*Plaintiff's Original Complaint – Page* 7

53.     Like Plaintiff, those other 5G Tower Crew employees regularly worked more than 40 hours per seven-day workweek relative to the 5G Tower Work but were not paid time and one-half their respective regular rates of pay for those overtime hours worked. Instead, like Plaintiff, those other 5G Tower Crew employees received their respective day rate pay only for that work without being paid any overtime premium pay by Defendant.

54.     Relative to the 5G Tower Work performed by Defendant's 5G Tower Crew employees paid on a day rate basis, Defendant did not make or keep an accurate record of the FLSA/PPPA daily and/or weekly hours worked by those employees.

## IV.     CONTROLLING LEGAL RULES

55.     The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

56.     "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

57.     "Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days." 29 C.F.R. § 785.39.

58.     An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (Solis, J.)

(*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

59.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

60.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

61.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

62.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216(b).

63.     It is "unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).

## V.     FLSA/PPPA CLAIMS

64.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

65.     All conditions precedent to this suit, if any, have been fulfilled.

66.     At relevant times, Defendant is and/or was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

67.     At relevant times, Defendant is and/or has been an enterprise engaged in commerce under the FLSA/PPPA. 29 U.S.C. § 203(s)(1)(A).

68.     Plaintiff and the putative collective action members are and/or were employees of Defendant pursuant to the FLSA/PPPA. 29 U.S.C. § 203(e).

69.     Plaintiff and the putative collective action members are and/or were covered employees under 29 U.S.C. § 207(a)(1).

70.     Plaintiff and the putative collective action members are and/or were paid on day rate basis by Defendant.

71.     Plaintiff and the putative collective action members regularly work and/or worked in excess of 40 hours per seven-day workweek as employees of Defendant.

72.     Defendant is and/or was required to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant seven-day workweek. 29 U.S.C. § 207(a)(1).

73.      Defendant failed to pay Plaintiff and putative collective action members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

74.      The putative collective action members are and/or were similarly situated to the Plaintiff and to each other under the FLSA/PPPA. 29 U.S.C. § 216(b).

75.      Defendant's violations of the FLSA/PPPA are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant is and was aware that Plaintiff and the putative collective action members are not and/or were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in a seven-day workweek. Defendant knew and/or had reason to believe that Plaintiff and the putative collective action members were working overtime hours for which they were not paid all FLSA/PPPA overtime wage compensation owed. Defendant also failed to keep an accurate record of the daily and weekly hours worked by Plaintiff and the putative collective action members relative to the 5G Tower Work which is evidence of a willful violation of the FLSA/PPPA. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) ("Although the FLSA does not permit an employee to bring a private action for recordkeeping violations, an employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime."); *Pye v. Oil States Energy Servs.*, LLC, 233 F. Supp. 3d 541, 565 (W.D. Tex. 2017) (same); *Lackey v. SDT Waste & Debris Servs., LLC*, No. 11-1087, 2014 U.S. Dist. LEXIS 85722, at *13 (E.D. La. June 23, 2014) (same).

76.      Plaintiff and the putative collective action members seek all damages available for Defendant's failure to timely pay all overtime wages owed.

## VI.   FLSA/PPPA COLLECTIVE ACTION

77.   Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Goodly v. Check-6, Inc.*, No. 16-CV-334-GKF-JFJ, 2018 U.S. Dist. LEXIS 187181, at *3 (N.D. Okla. Nov. 1, 2018).

78.   Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of himself and all current and/or former 5G Tower Crew employees of Defendant who (a) are and/or were paid on a day rate basis and (b) are not and/or were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek in the relevant time period. Because Defendant did not and does not pay all overtime premium compensation owed to its day rate paid 5G Tower Crew employees who routinely work(ed) in excess of 40 hours per workweek, Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

79.   The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

80.   Plaintiff reserves the right to establish sub-classes and/or modify collective action definition in any collective action certification motion or other filing.

## VII.   JURY DEMAND

81.   Plaintiff demands a jury trial.

## VIII.   DAMAGES AND PRAYER

82.   Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff and the Collective Action Members be awarded a judgment against Defendant and/or order(s) from the Court for the following:

a.     An order conditionally certifying this case as a FLSA/PPPA collective action and requiring notice to be issued to all putative collective action members;

b.     All damages allowed by the FLSA/PPPA, including back overtime wages;

c.     Liquidated damages in an amount equal to back FLSA/PPPA mandated wages;

d.     Legal fees;

e.     Costs;

f.     Post-judgment interest; and/or

g.     All other relief to which Plaintiff and the Collective Action Members are entitled.

Date: January 8, 2021.

Respectfully submitted,

By:     s/ Allen R. Vaught
         Allen R. Vaught
         Attorney-In-Charge
         Bar Membership ID MS 101695
         avaught@txlaborlaw.com
         Nilges Draher Vaught PLLC
         1910 Pacific Ave., Suite 9150
         Dallas, Texas 75201
         (214) 251-4157 – Telephone
         (214) 261-5159 – Facsimile

ATTORNEYS FOR PLAINTIFF