IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) James Robertson, on Behalf of Himself and<br>2) All Others Similarly Situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>1) Colburn Electric, LLC (a/k/a Colburn Air, Colburn Electric Company, and/or Colburn Aircom),<br><br>　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ Case No. 4:21-cv-00010-CVE-SH<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HIS MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND TO ISSUE NOTICE**

Plaintiff James Robertson ("Plaintiff" or "Robertson"), on behalf of himself and all others similarly situated, files this Opening Brief in Support of His Motion for Conditional Certification of a Collective Action and to Issue Notice. Pursuant to LCvR7-1(b), Plaintiff's Motion for Conditional Certification of a Collective Action and to Issue Notice (the "Motion") is filed separately from this Brief. Plaintiff's Exhibits in support of that Motion are attached to this Brief.

### I.　　SUMMARY

Plaintiff filed this lawsuit pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") on January 8, 2021 (ECF 2). Thereafter, eight Opt-in Plaintiffs[1] filed 29 U.S.C. § 216(b) consents to join this case.

Plaintiff alleges that Defendant Colburn Electric, LLC (a/k/a Colburn Air, Colburn Electric

---

[1] *See* ECF Nos. 4-1 (Ryan Scott), 4-2 (Leon Quinn), ECF 8-1 (Aaron Farris), ECF 9-1 (Michael Wallin), 10-1 (Michael Boswell), 21-1 (Christopher Robinson), 25-1 (Leonard Dale Boren, Jr.), and 26-1 (Seth McCrary).

Company, and/or Colburn Aircom) ("Defendant" or "Colburn Electric") violated the FLSA because it did not pay its 5G tower crew member employees time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek. In support of his Motion, Plaintiff provides his declaration, the declarations of Opt-in Plaintiffs Michael Wallin ("Wallin") and Leon Quinn ("Quinn"), and samples of relevant payroll records.

Plaintiff asks the Court to enter an Order granting FLSA collective action conditional certification for the following class:

> All current and/or former Tower Crew employees of Colburn Electric who are/were employed with Colburn Electric anytime in the time period between [*three years preceding the date of the Court's Order granting the Motion*] to [*the date of the Order granting the Motion*] and who work(ed) in excess of 40 hours in a given seven-day workweek but were allegedly not paid all overtime wages owed for such overtime hours worked.

Plaintiff asks that the Court authorize the issuance of notice and consent forms to the conditionally certified class pursuant to the schedule identified in the Motion. The proposed notice and consent forms are attached to this Brief.[2]

## II. FACTS

Defendant provides residential and commercial electrical installation, service, and repair services based from its primary business location in Broken Arrow, Oklahoma.[3] During the approximate time period of mid-2018 to mid-2020, Defendant also provided commercial services relative to upgrading cell/mobile towers to 5G capability and/or maintaining same in states including Illinois, Iowa, Kansas, Missouri, Oklahoma, Texas, and Wisconsin.[4]

---

[2] *See* Exhibit A (Proposed Notice) & Exhibit B (Consent and Client Data Form).
[3] *Compare* ECF 1 (Original Complaint), ¶¶ 31, 34, 35 *with* ECF 14 (Answer to Original Complaint), ¶¶ 31, 34, 35. *See also*, Exhibit C (Sample of Defendant's tower work records).
[4] *Id.*; Exhibit D, ¶¶ 2-4 (Decl. Robinson); Exhibit E, ¶¶ 2-6 (Decl. Wallin); & Exhibit F, ¶¶ 2-5 (Decl. Quinn).

In connection with those tower services, Defendant employed numerous workers to perform electrical and electrical related work (the "Tower Crews" or "Tower Crew Employees").[5] Those Tower Crews consisted of Plaintiff, Opt-in Plaintiffs, and other employees.[6] The Tower Crew Employees, including crew leads such as Wallin and Quinn, worked together on a given tower performing manual labor to accomplish the task required to get the 5G tower operational.[7]

Tower Crew Employees were typically away from their respective homes for one or more consecutive weeks at a time staying overnight at hotels paid for by Defendant when performing tower crew work.[8] Some of those trips, especially for tower locations outside of Oklahoma, could take up to seven hours or more one way.[9] That travel typically cut across the normal working hours during both regular working days (e.g. days that tower work was performed) and nonworking days (e.g. travel from home to the hotel the day before work began at a given tower location).[10] Other than a few instances, Defendant did not count that travel time as hours worked.[11]

Between approximately September 2018 to approximately November/December 2019, Defendant paid Tower Crew Employees on a day rate basis for days they worked at tower locations.[12] During that time period, Tower Crew Employees regularly worked in excess of 40 hours per seven-day workweek but were not paid time and one-half their respective regular rates of pay for any of those overtime hours.[13]

---

[5] *Compare* ECF 1, ¶¶ 37 *with* ECF 14, ¶ 37. *See* Exhibit D, ¶¶ 2, 6, 14; Exhibit E, ¶¶ 2, 14; & Exhibit F, ¶ 6.
[6] Exhibit D, ¶¶ 2, 5-6; Exhibit E, ¶¶ 7-9; Exhibit F, ¶¶ 6-7; & Exhibit C (Colburn Electric records showing Plaintiff and Opt-in Plaintiffs working tower locations in various states).
[7] Exhibit D, ¶ 2; Exhibit E, ¶ 8; & Exhibit F, ¶ 6.
[8] Exhibit D, ¶¶ 4-6, 11-14; Exhibit E, ¶¶ 7, 11, 14-16; & Exhibit F, ¶¶ 3, 10-13, 17.
[9] Exhibit D, ¶¶ 11, 14; Exhibit E, ¶¶ 14-16; Exhibit F, ¶¶ 12, 13, 17.
[10] Exhibit D, ¶¶ 5, 6, 14; Exhibit E, ¶¶ 11, 15-16; & Exhibit F, ¶¶ 10-13, 17.
[11] Exhibit D, ¶¶ 11-12; Exhibit E, ¶ 11; & Exhibit F, ¶¶ 9-13.
[12] Exhibit D, ¶¶ 7-10, 14; & Exhibit E, ¶¶ 10-13, 16.
[13] *Id.*

In approximately November 2019 to December 2019, Defendant began paying Plaintiff and other Tower Crew Employees on an hourly basis and paid them some, but not all, overtime premium pay for weekly overtime hours worked.[14] Unpaid overtime wages for time periods that Tower Crew Employees were paid on an hourly basis are based on Defendant not counting all compensable travel time as hours worked.[15]

In addition to day rate pay and hourly pay, as the case may be, Defendant also paid Tower Crew Employees remuneration it labeled as bonus pay, other pay, and nontaxable.[16]

### III.     ARGUMENT & AUTHORITIES

**A.     The FLSA Collective Action Conditional Certification Standard.**

**1.     Congressional Policy Provides That Employee-Plaintiffs "Should Have the Opportunity to Proceed Collectively."**

"The FLSA states that '[a]n action ... may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.'" *Sharp v. CGG Land (U.S.) Inc.*, 14-CV-0614-CVE-TLW, 2015 WL 222486, at *2 (N.D. Okla. Jan. 14, 2015) (Eagan, J.) (citing 29 U.S.C. § 216(b)). Through 29 U.S.C. § 216(b), "Congress has stated its policy that [employee-plaintiffs] should have the opportunity to proceed collectively." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). Section 216(b) "expressly authorizes employees to bring collective … actions on behalf of ... themselves and other employees

---

[14] Exhibit D, ¶ 13; & Exhibit E, ¶¶ 12, 14.
[15] Exhibit D, ¶ 9; Exhibit E, ¶ 12.
[16] Exhibit D, ¶ 9; Exhibit E, ¶ 12; Exhibit G (Sample of Wallin payroll records (highlight added for emphasis)); Exhibit H (Sample of Quinn payroll records (highlight added for emphasis)); Exhibit I (Sample of Opt-in Plaintiff Ryan Scott payroll records (highlight added for emphasis)); Exhibit J (Sample of Opt-in Plaintiff Aaron Farris' payroll records (highlight added for emphasis)); & Exhibit K (Sample of Opt-in Plaintiff Christopher Robinson's payroll records (highlight added for emphasis)). As stated in the declarations of Robertson, Wallin, and Quinn, the "hours" category in Defendant's payroll records are really the number of days worked when Tower Crew Employees were paid on a day rate basis. *See* Exhibit D, ¶ 8; Exhibit E, ¶ 10; & Exhibit F, ¶¶ 8-9.

similarly situated." *Id.*

This congressional mandate for collective litigation promotes the FLSA's "broad remedial goal" by affording employee-plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources…these benefits depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Thus, granting conditional certification and notice under 29 U.S.C. § 216(b) at an early stage of litigation is appropriate to further the FLSA's broad remedial goals and to promote efficient case management.

"Section 216(b) is an opt-in class action mechanism that provides for a class action where the complaining employees are similarly situated." *Chapman v. BOK Fin. Corp.*, 12-CV-613-GKF-PJC, 2013 WL 12032545, at *2 (N.D. Okla. Apr. 30, 2013) (Frizzell, J.).

> **2. Step One of the Conditional Certification Process Involves a Lenient Standard Requiring Nothing More than Substantial Allegations that the Putative Class Members Were Together the Victims of a Single Decision, Policy, or Plan.**

"The Tenth Circuit has approved an ad-hoc, two-step approach to § 216(b) certification claims." *Sharp*, 2015 WL 222486, at *2 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (quotations omitted).

During the first step, "the court will make an initial notice stage determination of whether plaintiffs are similarly situated." *Id.* (citing *Thiessen*, 267 F.3d at 1102) (quotations and brackets omitted). "Review at this stage is lenient, as courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (citing *Thiessen*, 267 F.3d at 1102). "When making the determination at the first stage, courts do not reach the merits of the case, focusing instead on whether the complaint and other allegations show that potential class members are similarly situated." *Id.* (citing *Renfro v. Spartan*

*Computer Servs., Inc.*, 243 F.R.D. 431, 435 (D.Kan.2007). "Generally, district courts in this Circuit have limited the scope of their review at the [first step] of certification to the allegations in plaintiffs' complaint and supporting affidavits." *Huddleston v. John Christner Trucking, LLC*, 17-CV-549-GKF-FHM, 2018 WL 7373644, at *1 (N.D. Okla. May 1, 2018) (Frizzell, J.) (citing *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1303 (D. Kan. 2010); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *3 (D. Colo. Apr. 21, 2012)).

"If the court determines a collective action should be certified for notice purposes, potential collective members are given notice and the opportunity to opt in." *Huddleston*, 2018 WL 7373644, at *1. "The action then proceeds as a representative action throughout discovery." *Id.* (citing *Kaiser v. At the Beach, Inc.*, No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *3 (N.D. Okla. Dec. 9, 2010) (Kern, J.)).

"At the second stage, if defendants move to decertify the collective action after the conclusion of discovery, the Court applies stricter standards to class certification." *Sharp*, 2015 WL 222486, at *2 (citing *Fortna v. QC Holdings, Inc.*, No. 06–CV–0016–CVE–PJC, 2006 WL 2385303, at *1 (N.D. Okla. Aug. 17, 2006)). "In applying that stricter standard, courts review several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required ... before instituting suit." *Id.* (citing *Thiessen*, 267 F.3d at 1103) (quotations and brackets omitted).

**B.**  **Plaintiff Has Satisfied His First Step Notice Stage Burden of Proof for Collective Action Conditional Certification.**

Plaintiff, through the three declarations, payroll records, and pleadings cited herein, has presented substantial allegations that he and other Tower Crew Employees were, together, the victims of Defendant's decision, policy, and/or plan to not pay them all overtime wages owed

under the FLSA.

"The FLSA requires employers to pay their employees overtime for each hour worked over 40 in a workweek." *Perez v. El Tequila*, LLC, 847 F.3d 1247, 1252 (10th Cir. 2017) (citing 29 U.S.C. § 207(a)(1)). "The overtime rate is at least one and one-half times the employee's regular rate." *Id.*

First, when paid on a day rate basis, Plaintiff has substantially alleged that he and other Tower Crew Employees worked more than 40 hours per seven-day workweek without Defendant paying them time and one-half their respective regular rates of pay for all such overtime hours worked.[17] The declarations of Robertson, Wallin, and Quinn cite specific examples of time sheets that, when compared with Defendant's payroll records, identify weekly overtime hours being worked without Defendant paying them time and one-half their respective regular rates of pay for same.[18] Plaintiff alleges that the failure to pay all overtime premium pay to Tower Crew Employees who were paid on a day rate basis is a violation of the FLSA. Tower Crew Employees were generally paid on a day rate basis between approximately September 2018 and approximately November/December 2019.[19] Thereafter, they were paid on an hourly basis.[20]

Second, although Plaintiff and other Tower Crew Employees were paid some overtime wages when they were paid on an hourly basis, Plaintiff alleges they were not paid all overtime wages owed by Defendant due to unpaid travel time which should have been counted as compensable time under the FLSA. Evidence submitted in support of the Motion shows that Tower

---

[17] Exhibit D, ¶¶ 1-12, 14; Exhibit E, ¶¶ 3-11, 13, 15, 16; Exhibit F, ¶¶ 2-17.
[18] Exhibit D, ¶ 11; Exhibit E, ¶¶ 10-11; Exhibit F, ¶¶ 8-9.
[19] Exhibit D, ¶¶ 7-8, 10-13, 14; Exhibit E, ¶¶ 10-13, 15-16; & Exhibit F, ¶¶ 2, 8-13, 15, 17 (Quinn was always paid a day rate for tower work because his employment ended prior to the conversion to hourly pay).
[20] Exhibit D, ¶¶ 13-14; Exhibit E ¶¶ 12, 14, 16.

Crew Employees routinely travelled far from their respective homes[21] to perform tower work in states such as Illinois, Iowa, Kansas, Missouri, Texas, and Wisconsin and that such work required overnight stays in hotels near the tower work location.[22] Plaintiff alleges that the travel time cut across (1) regular working days during normal working hours in addition to (2) nonworking days during time periods that would have been normal working hours if the travel had occurred on regular working days.[23] With regards to unpaid travel time:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days.

29 C.F.R. § 785.39. *See also, Felts v. Stallion Oilfield Services Ltd.*, 19-CV-03153-RM-NYW, 2020 WL 3052525, at *5 (D. Colo. May 18, 2020), *report and recommendation adopted*, 19-CV-03153-RM-NYW, 2020 WL 3047656 (D. Colo. June 8, 2020) (Federal regulations [relative to the FLSA] … provide for compensation of any travel time if it keeps an employee away from home overnight ... when it cuts across the employee's workday, whether for hours worked on regular working days during normal working hours or during the corresponding hours on nonworking days." (citing 29 C.F.R. § 785.39) (brackets and quotations omitted)).

While there were two different methods of pay at specific times (day rate pay and hourly pay as explained *supra*), the failure to pay all overtime wages owed is the common decision, policy,

---

[21] Defendant's payroll records identify the home addresses of Tower Crew Employees in addition to the corresponding specific tower locations worked by specific dates. *Compare* Exhibits G, H, I, J, & K (sample of Defendant's payroll records identifying the home address of specific Opt-in Plaintiffs in the upper left corner) *with* Exhibit C (Defendant's records showing the specific tower locations worked by date worked and corresponding pay date for Plaintiff and Opt-in Plaintiffs).
[22] Exhibit D, ¶¶ 4-6, 11-14; & Exhibit E, ¶¶ 5, 7, 11, 14-16.
[23] *Id.*

and/or plan which Plaintiff alleges violated the FLSA and warrants conditional certification. *See Ramirez v. Trail*, 333 F.R.D. 89, 94 (E.D. Tex. 2019) ("The denial of overtime wages itself is the alleged policy and plan in place by [d]efendant; that there were three different methods [of pay to] accomplishing the denial of overtime wages is insufficient to preclude conditional certification… .").

Plaintiff has presented substantial allegations that he and other Tower Crew Employees were, together, the victims of Defendant's decision, policy, and/or plan to not pay all overtime wages owed under the FLSA. As such, Plaintiff asks that the Court grant the Motion.

### IV.     CONCLUSION

For the reasons addressed above, Plaintiff respectfully requests that the Court grant the Motion and conditionally certify this case as a FLSA collective action under 29 U.S.C. § 216(b) and direct that notice be sent to potential opt-ins enabling them to join. Plaintiff requests such other and further relief as deemed appropriate by the Court.

Date: November 8, 2021.

Respectfully submitted,

By:     s/ Allen R. Vaught
        Allen R. Vaught
        Attorney-In-Charge
        Bar Membership ID MS 101695
        Vaught Firm, LLC
        1910 Pacific Ave., Suite 9150
        Dallas, Texas 75201
        (972) 707-7816 – Telephone
        (972) 591-4564 – Facsimile
        allen@vaughtfirm.com

        Michael P. Taubman
        Local Counsel
        WELSH & MCGOUGH, PLLC

                2727 E. 21st St., Ste. 600
                Tulsa, OK 74114
                Telephone:  918.585.8600
                Telefax:  918.794.4411
                michael@tulsafirm.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF CONFERENCE**

On November 2, 2021 and November 5, 2021, the undersigned counsel for Plaintiff and Opt-in Plaintiffs conferred with counsel for Defendant regarding the filing of the subject Motion. Defendant is opposed to the relief requested in the Motion.

                s/Allen R. Vaught
                Allen R. Vaught

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon counsel of record by the Northern District of Oklahoma CM/ECF method on November 8, 2021.

                s/ Allen R. Vaught
                Allen R. Vaught